UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ETRA FERNANDEZ, in her capacity as the natural tutrix of A.F. ) ) ) | Case No: |
| Plaintiff, ) ) | Judge: |
| v. ) ) | Magistrate Judge: |
| JEFFERSON PARISH SCHOOL BOARD, ) ) | |
| Defendant. ) ) | |

## COMPLAINT

Plaintiff, ETRA FERNANDEZ, as the natural tutrix of A.F., by and through undersigned counsel, hereby files this Complaint and sues the JEFFERSON PARISH SCHOOL BOARD ("JEFFERSON") for damages, injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("Americans with Disabilities Act" or "ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. ("Rehabilitation Act"), and the Louisiana Commission on Human Rights, La. Rev. Stat. Ann. § 51:2231 *et seq*. ("LCHR"), and alleges the following:

## JURISDICTION AND PARTIES

**1.**     This is an action for injunctive and declaratory relief, compensatory damages, nominal damages, and attorneys' fees and costs to redress the Defendant's unlawful discrimination pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*., and the Louisiana Commission on Human Rights, La. Rev. Stat. Ann. § 51:2231 *et seq*.. This Court is vested with original jurisdiction pursuant to 28

1

U.S.C. § 1331 and 28 U.S.C. § 1343.

2. With regards to the request for nominal damages, it is Etra Fernandez's position that an award of nominal damages would confer significant civil rights to the public, as a judgment in her favor against JEFFERSON, regardless of the amount, would deter JEFFERSON from discriminating against individuals with mobility disabilities in the future.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property which is the subject of this action is located in Jefferson Parish, Louisiana.

4. Plaintiff, Etra Fernandez (Ms. Fernandez), as the natural tutrix of A.F. Ms. Fernandez is a resident of the State of Louisiana, Jefferson Parish.

5. A.F. is a qualified individual with a disability under the ADA. A.F. has facioscapulohumeral muscular dystrophy ("FSHD")

6. Due to his disability, A.F. is substantially impaired in several major life activities and requires a wheelchair for mobility. Specifically, A.F. is unable to climb stairs or walk long distances without assistance. A.F. is also subject to frequent falls.

7. Upon information and belief, JEFFERSON is the political entity which owns and operates John Ehret High School, which is located at 4300 Patriot St, Marrero, LA 70072 (hereinafter referred to as "the Property").

8. Upon information and belief, JEFFERSON is the political entity which owns and operates other high schools located on the Westbank of Jefferson Parish.

9. Upon information and belief, the Property is a public facility which is open to members of the public, including A.F.

10. JEFFERSON is responsible for complying with the obligations of the ADA, Rehabilitation Act, and LCHR.

11. All events giving rise to this lawsuit occurred in the Eastern District of Louisiana, Jefferson Parish, Louisiana.

## STATEMENT OF FACTS

12. A.F. is a fourteen (14) year old high school student who has FSHD. Because of his FSHD, A.F. wears leg braces and cannot climb stairs or walk long distances or inclines without assistance. A.F. suffers falls on nearly a weekly basis and cannot lift heavy objects.

13. On Monday, September 16, 2019, Ms. Fernandez and A.F. moved from Slidell to Harvey, Louisiana. A.F. previously attended Ninth Grade at Northshore High School.

14. On Tuesday, September 17, 2019, Ms. Fernandez and A.F. visited the Property to enroll A.F. in the tenth grade at John Ehret High School ("Ehret"). They were told to come back the next day.

15. On Wednesday, September 18, 2019 (one day after first attempting to enroll in Ehret), Ms. Fernandez and A.F. returned to the Property. They told the Jefferson employee tasked with enrolling A.F. in classes at Ehret that he could not climb stairs. They made the reasonable accommodation request that all his classes be held on the first floor of the Property. They also requested additional time for A.F. to travel from class to class as he has difficulty ambulating.

16. Upon information and belief, there are no elevators or escalators located at the property. The sole means to access the second floor at the Property is via stairs.

**17.** Upon information and belief, there are additional mobility-related barriers at the Property, both interior and exterior, to be identified following a complete inspection of the Property.

**18.** Upon information and belief, Ehret holds all the Ninth and Tenth Grade classes on the second floor at the Property, meaning that A.F. would be forced to climb stairs to attend his classes.

**19.** The Jefferson employee then suggested that A.F. enroll in special education classes because those classes are held on the first floor of an adjacent building. Ms. Fernandez and A.F. rejected this offer because A.F. does not have any mental disabilities and therefore does not belong in or require special education classes. He requires an accessible school.

**20.** A.F. and Ms. Fernandez asked what Ehret does with students who use wheelchairs. They were told that students who use wheelchairs were transferred to different schools. It was then suggested to them that they go to the district office to be placed in a different school.

**21.** Ms. Fernandez and A.F. then went directly to the district office to attempt to transfer to another school, but they did not know what school(s) were accessible. At the district office, they were given no guidance as to which schools were accessible for the mobility impaired and which were not. Ms. Fernandez was then forced to go home and use Google to search for and call to different schools, asking if they were accessible. However, Ms. Fernandez had no way of knowing if the receptionist who answered the phone at the respective schools actually knew about accessibility or the ADA.

22. On Friday, September 20, 2019 (three days after first attempting to enroll in Ehret), Ms. Fernandez and A.F. returned to the Property. They met with Nicole Jackson who told them that she would place A.F. into a new school. Ms. Jackson instructed Ms. Fernandez to call Glenn Delcarpio at the district office to assist her in finding a new school for A.F.

23. On Friday, September 20, 2019, Ms. Fernandez called the district office as instructed but every time she tried to leave Mr. Delcarpio a voicemail, she was returned to the receptionist.

24. On Monday, September 23 and Tuesday, September 24 (six and seven days, respectively, after first attempting to enroll in Ehret), Ms. Fernandez tried to call Mr. Delcarpio and was unable to reach him. She also emailed Ms. Jackson and received no response.

25. On Thursday, September 26, 2019 (nine days after first attempting to enroll in Ehret), A.F. and MS. Fernandez returned to the Property to try to enroll A.F. in school. They talked to Ms. Jackson and a counselor. Ms. Jackson asked them if they had located a new school for A.F.. Ms. Jackson then summoned Mr. Delcarpio and they spoke with him. Mr. Delcarpio brought an Ehret class schedule intended for A.F.. The classes Mr. Delcarpio picked for A.F. were: Technical Writing, Speech 1, Math Essentials, and Civics Honors. These classes were chosen by Mr. Delcarpio, solely because they were not located on the second floor. However, the class schedule for the Spring Semester included classes located on the second floor.

26. Upon information and belief, "Technical Writing" is a remedial English class.

|   |   |
|---|---|
|   | A.F. does not belong in remedial classes. "Speech 1" is a speech assistance class. A.F. speaks just fine and does not require assistance with his ability to speak. "Math Essentials" is a remedial math class. A.F. belongs in Algebra. |
| 27. | Furthermore, the location of the proposed classes are in classrooms that are spread too far apart for A.F. to travel in the little time between classes. |
| 28. | When Ms. Fernandez told Mr. Delcarpio that his plan would not work for A.F. because the classes did not meet his academic needs and because of the lack of close proximity between the classrooms, instead of granting Ms. Fernandez's reasonable accommodation request, Mr. Delcarpio told A.F. to transfer to another school. |
| 29. | On Friday, September 27, 2019 (ten days after first attempting to enroll in Ehret), Ms. Fernandez returned yet again to the district office to try to find a school for A.F.. She spoke with Gretchen Williams who told her that until they could find an accessible school, A.F. would enroll in "virtual classes." However, this plan for virtual classes was to be merely a stopgap measure until an accessible conventional school was found. Gretchen Williams then emailed Ms. Sheena Bouie (copying Ms. Fernandez) about signing up A.F. for virtual classes. |
| 30. | The virtual classes do not contain an instruction component. Rather, virtual classes consist of workbooks and packets to be completed at home. Virtual classes are attended in isolation, while conventional classes are attended with one's peers and classmates. Conventional classes have instructors who are available for questions and comments, while the virtual classes do not have any instructors. |
| 31. | On Tuesday, October 1, 2019 (fourteen days after first attempting to enroll in |

Ehret), Ms. Sheena Bouie called Ms. Fernandez to enroll A.F. in virtual classes.

32. On Wednesday, October 2, 2019 (fifteen days after first attempting to enroll in Ehret), A.F. was signed up for virtual school during the search for an accessible conventional for A.F..

33. On Friday, October 4, 2019, (eighteen days after first attempting to enroll in Ehret), Ms. Fernandez called Sheena Bouie and left a message regarding enrolling A.F. into a conventional school. She sent a follow-up email to Ms. Bouie that day, stating, "My son has been out of school too long and I need this handled as soon as possible thanks."

34. On Monday, October 7, 2019 (twenty days after first attempting to enroll in Ehret), Ms. Fernandez sent Gretchen Williams a follow-up email about enrolling A.F. in a conventional school. She received an out-of-office notification in response.

35. On Wednesday, October 9, 2019 (twenty two days after first attempting to enroll in Ehret), Julia Johns emailed Ms. Fernandez an application to enroll in Jefferson Parish Schools. Ms. Johns requested certain documents from A.F.'s previous schools.

36. On Monday, October 21, 2019 (thirty four days after first attempting to enroll in Ehret), after securing all the necessary documents to complete the application, Ms. Fernandez emailed Ms. Johns, asking when she could come in to bring the application. Ms. Fernandez then dropped off the completed application.

37. On Monday, October 28, 2019 (forty one days after first attempting to enroll in Ehret), Ms. Fernandez emailed Germaine Gilson, an administrator at the Jefferson

Parish School Board, to follow up on finding A.F. a conventional school to attend. Ms. Fernandez previously tried calling Ms. Gilson and leaving voice messages. In an October 28 email, she explained, "…I have been trying to reach you via phone. I left numerous messages but I still haven't received a callback. I was told to contact you regarding finding a school that can meet my son's accessibility needs. Ms. Williams set up virtual school for him but it was 2 weeks later before he was set up to start doing schoolwork.  Virtual school is just a temporary fix so he does not get behind more than he already has since we moved to Harvey…"

38. That same day, Ms. Gilson sent a reply email saying that she received A.F.'s Individual Healthcare Plan (IHP) dated February 8, 2018. In the email, Ms. Gilson asserted that, "John Ehret is capable of addressing all of A.F.'s needs. The administration at John Ehret can allow for additional time between classes for A.F. to walk slowly. I'm not sure why you weren't contacted again by the Ehret team, however, I can assist in having someone call you so you can register A.F. at Ehret. All of his needs can be met at Ehret."

39. That same day, Ms. Fernandez responded via email, "That doctors note was years ago and from his reg doctor not his neurologist. He has Muscular Dystrophy and it progresses with age as well as weight gain. No ehret can not meet his needs because the classes are upstairs and the ones they put him in downstairs were too far for him to walk as well as classes not on his academic level. Mr. Delcarpio even stated himself that the classes will be upstairs. I repeat he can not walk up and downstairs. I suggest you find a school that can adequately address my sons needs or I will have to take legal action."

40. Despite the repeated statements that asserting that A.F. cannot climb stairs, Ms. Gilson replied via email that the school had received no *documents* that A.F. needs "a special placement." Ms. Gilson added that if there was "updated information" from a medical professional, she could "take care of this immediately."

41. Ms. Fernandez wrote back that A.F.'s doctors in Louisiana were still waiting for records to come from his doctor in California, and that she could not go directly to her orthopedist or neurologist. A.F. would first have to go to a primary care doctor who would refer A.F. to a specialist. However, A.F. would have to wait until November 29, 2019 for a primary care appointment.

42. Ms. Fernandez then sent Ms. Gilson the phone number of A.F.'s former physical therapist so that Jefferson Parish could request his medical records. Ms. Gilson never followed up with this request.

43. That same day, Ms. Fernandez replied that the muscular dystrophy diagnosis was documented on the IHP that Ms. Gilson had previously acknowledged. Ms. Fernandez sent Ms. Gilson a link explaining muscular dystrophy and its symptoms.

44. The same day Ms. Fernandez learned of Ms. Gilson's demands that she provide documentation of her son's muscular dystrophy and his attendant limitations, Ms. Fernandez took A.F. to Ochsner Urgent Care, where she secured the documents she believed Ms. Gilson was requesting.

45. On Tuesday, October 29, 2019 (forty two days after first attempting to enroll in Ehret) Ms. Fernandez emailed Ms. Gilson, forwarding a note from Kawana

Lockwood, NP that states: "A.F. Fernandez was at Ochsner Health System on 10/28/29. He may return to work/school on 10/29/2019 with restrictions. Patient has limitation due to Muscular Dystrophy. Patient unable to walk more than 5 minutes. Patient must keep leg brace on at all times." Ms. Fernandez also sent in the email other documentation from the visit to Ochsner, including a Muscular Dystrophy fact sheet that states "problems climbing stairs" is a common symptom.

46. To date (sixty two days after first attempting to enroll in Ehret), Ms. Fernandez has not received a response from Ms. Gilson. A.F. has not attended a single class at Ehret, or any other conventional school owned or operated by Jefferson. A.F. continues to miss school because of Jefferson's discrimination.

## COUNT I – VIOLATION OF TITLE II OF THE AMERICANS WITH DISIBILITIES ACT

47. Ms. Fernandez and A.F. repeats and realleges all preceding paragraphs in support of this claim.

48. The Property is a place of public accommodation, subject to the ADA, generally located at 4300 Patriot St, Marrero, LA 70072.

49. A.F. would like to attend high school at Ehret, which is located at the Property due to its proximity to his home. Alternatively, A.F. would like to attend any Jefferson Parish high school within close proximity to his home that can accommodate his needs.

50. A.F. has visited the Property in the past.

51. While at the Property, A.F. learned that the sole means of access to the second floor is via stairs.

52. A.F. is aware of mobility-related barriers at the Property.

53. A.F. intends to, and will, enter the Property to utilize its services in the future, but fears that he will encounter the same barriers to access which are the subject of this action.

54. The lack of an elevator or escalator is excluding A.F. from the programs, services, and activities offered at the Property.

55. The lack of an elevator or escalator is excluding A.F. from the equal opportunity to participate in, or benefit fromt he programs, services, and activities which are offered to the general public at the Property.

56. A.F. presently fears that he will encounter the mobility-related barriers which exist at the Property when he returns to the Property in the near future.

57. Upon information and belief, Jefferson has failed to adopt any alternatives to barrier removal which would provide A.F. with meaningful access to the basic services which are available for public use at the Property.

58. The services that A.F. has not been able to access at the Property includes, but is not limited to the second floor, preventing him from attending school at Ehret.

59. 42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

60. Jefferson has discriminated against A.F. by denying him full access to the services, programs, and/or activities by failing to make its facilities readily accessible as required by U.S.C. §12132 and its implementing regulations 28

C.F.R. Part 35.101-35.190 *et. seq.*

61. Jefferson has discriminated, and is continuing to discriminate, against A.F. in violation of the ADA by excluding and/or denying A.F. the full and equal benefits of its services, programs, and/or activities by failing to, inter alia, have accessible facilities. A.F. personally experienced the numerous barriers to access on the Property discussed herein.

62. 28 C.F.R. § 35.130(4) states that "[a] public entity may not, in determining the site or location of a facility, make selections–(I) [t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination..." Jefferson has violated this provision by providing its services, programs, and/or activities at an inaccessible facility.

63. Jefferson has discriminated against A.F. by excluding him from participation in, and denying the benefits of, the services, programs, and/or activities at its Property because of A.F.'s disability, all in violation of 42U.S.C.§ 12132.

64. Upon information and belief, Jefferson continues to discriminate against A.F. by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals because of failure to remove architectural barriers.

65. The above conduct constitutes intentional discrimination.

**66.** The above conduct constitutes deliberate indifference.

**67.** Upon information and belief, A.F. has been denied access to, and has been denied the benefits of services, programs and/or activities of Jefferson's Property, and has otherwise been discriminated against and damaged by Jefferson because of Jefferson's discrimination, as set forth above.

**68.** A.F. will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. Furthermore, as required by the ADA and other remedial civil rights legislation, to properly remedy Jefferson's discriminatory violations and avoid piecemeal litigation, A.F. requires a full inspection of the Property in order to catalogue and cure all the areas of non-compliance with the ADA.

**69.** A.F. has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from Jefferson pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

**70.** A.F. was not afforded an equal opportunity to engage in a good faith dialogue about his options to attend an accessible school owned and operated by Jefferson.

**71.** A.F. is suffering irreparable harm.

**72.** Pursuant to 42 U.S.C. § 12131, *et seq.*, this Court is provided authority to grant A.F.'s injunctive relief including an Order Jefferson to alter the Property to make its programs, services, and accommodations readily accessible to and useable by A.F. and all other persons with mobility-related disabilities as defined by the ADA.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

73. Ms. Fernandez and A.F. repeats and realleges all preceding paragraphs in support of this claim.

74. A.F. brings this claim against Jefferson, based upon Section 504 of the Rehabilitation Act, 29 U.S.C. §794, *et seq*.

75. The Rehabilitation Act provides that:

> *No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.  29 U.S.C. § 794(a).*

76. Upon information and belief, a non-exclusive list of Jefferson's violations of the Rehabilitation Act and discriminatory conduct against A.F. are evidenced by:

    A. denying A.F. access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations, and services offered at the Property;

    B. by otherwise limiting A.F. in the enjoyment of the rights, privileges, advantages, and opportunities enjoyed by individuals without disabilities who receive Jefferson's aids, benefits, and services at the Property;

    C. making facility site or location selections that have the effect of discriminating against individuals with disabilities, and excluding them from and denying them the benefits of, and defeating or substantially impairing the accomplishment of the objectives of, the services, programs, and activities offered by Jefferson at the

        Property;

    D.    failing to administer services, programs, and activities in the most integrated setting appropriate to the needs of A.F.;

    E.    excluding A.F. from participation in, and the benefits of, Jefferson's services, programs, and activities as a result of Jefferson's Property being inaccessible to or unusable by A.F.; and

    F.    failing to design and/or construct new facilities, or make alterations to existing facilities, which are readily accessible to and useable by individuals with disabilities.

77. Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at the Property which A.F. is more likely than not going to encounter upon future visits to the Property. A.F. brings this action:

    A.    to redress injuries suffered as a result of Jefferson's discriminatory actions and inactions, as set forth herein;

    B.    to reasonably avoid further and future injury as a result of Jefferson's ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the ADA and Rehabilitation Act;

    C.    to ensure Jefferson's Property is accessible as required by the relevant applications of Title II of the ADA;

    D.    to be made whole and ensure future compliance; and

    E.    to reasonably avoid future ADA and Rehabilitation Act litigation involving the same Property and under the same laws, as set forth

      herein, with its concomitant impact on otherwise scarce judicial resources.

78. Only through a complete inspection of the Property and related facilities, undertaken by A.F. and/or his representatives, can all said violations be identified and cured so as to ensure access for people with mobility-related disabilities, the primary purpose of this action.

79. Upon information and belief, Jefferson is the recipient of federal funds.

80. Upon information and belief, as the recipient of federal funds, Jefferson is liable for damages to A.F. as a result of its acts and omissions constituting intentional discrimination. It is A.F.'s position that even an award of nominal damages in his favor would confer significant civil rights to the public, as a judgment of against Jefferson, regardless of the amount, would likely deter Jefferson from discriminating against individuals with disabilities in the future.

81. As set forth above, A.F. has been denied access to, and without the relief requested herein will continue to be denied the access to, the goods, services, programs, facilities, activities, and accommodations offered by Jefferson, solely by reason of his disability, and has otherwise been discriminated against and damaged solely by reason of his disability, as a result of Jefferson's Rehabilitation Act violations set forth above.

82. A.F. has been obligated to retain undersigned counsel for the filing and prosecution of this action. A.F. is entitled to recover reasonable attorneys' fees, costs, and litigation expenses from Jefferson pursuant to 29 U.S.C. §794(b).

83. Pursuant to 29 U.S.C. §794(a), this Court is provided authority to grant A.F.

injunctive relief, including an Order that Jefferson alter the subject premises, facilities, services, activities, programs, and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act. This Court is also provided authority to grant A.F. compensatory damages for Jefferson's discriminatory actions.

84. Upon information and belief, as set forth herein, Jefferson has violated the Rehabilitation Act by intentionally excluding A.F., solely by reason of his disability, from the participation in, and denying him the benefits of, and have otherwise subjected him to discrimination under Jefferson's programs and activities. These actions constitute intentional discrimination and deliberate indifference.

## COUNT II: VIOLATIONS OF THE LOUISIANA COMMISSION ON HUMAN RIGHTS

85. Ms. Fernandez repeats and realleges all preceding paragraphs in support of this claim.

86. At all times relevant to this action, the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 et. seq., (hereafter "LCHR") has been in full force and effect and has applied the conduct of Jefferson.

87. At all times relevant to this action, A.F. has experienced substantial limitations to several major life activities, including walking up and down stairs, walking, standing, and bending; has been diagnosed with FSHD; and has been an individual with a disability within the meaning of LCHR, LA. REV. STAT. ANN. § 51:2232(3)(a).

88. At all times relevant to this action, Jefferson's Property has qualified as places of public accommodation, as defined by LA. REV. STAT. ANN. § 51:2232(9) by virtue of either

supplying services to the general public, soliciting and accepting the patronage of the general public, or having been supported directly or indirectly by government funds.

89. The LCHR prohibits discriminatory practices and provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the grounds of . . . disability." LA. REV. STAT. ANN. § 51:2247.

90. The LCHR extends relief to "any person deeming himself injured by" discrimination in violation thereof. LA. REV. STAT. ANN. § 51:2264.

91. Defendants discriminated against A.F., on the basis of disability, in violation of LA. REV. STAT. ANN. § 51:2247, by denying him the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered at the Property due to many of the architectural barriers discussed in this Complaint.

92. A.F. deems himself injured by the Jefferson's discrimination and brings suit under the LCHR to recover compensatory damages for the injuries and loss he sustained as a result of Defendant's discriminatory conduct and deliberate indifference as alleged herein above.

93. A.F. is further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the LCHR, LA. REV. STAT. ANN. § 51:2264.

**PRAYER FOR RELIEF**

WHEREFORE, Etra Fernandez, as the natural tutrix of A.F. prays that:

    A.    This Court issue a Declaratory Judgment that determines that JEFFERSON is in violation of Title II of the Americans with

        Disabilities Act, 42 U.S.C. § 12131 *et seq*;

B.     This Court issue a Declaratory Judgment that determines that the Property, programs, and activities owned, operated, and administered by Jefferson are in violation of the Rehabilitation Act;

C.     This Court issue a Declaratory Judgment that determines that the Property, programs, and activities owned, operated, and administered by Jefferson are in violation of the LCHR.

D.     This Court issue a Declaratory Judgment that determines that the property, programs and activities owned, operated and administered by Jefferson is in violation of the Rehabilitation Act;

E.     This Court grant permanent injunctive relief against Jefferson including an Order to make all required alterations to the Property; or to make such Property readily accessible to and usable by individuals with disabilities to the extent required by the ADA and LCHR; and to require Jefferson to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such stops that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of failure to remove mobility-related barriers;

F.  This Court enter an Order directing Jefferson to alter and modify the Property and its programs, services, and accommodations to comply with the ADA, Rehabilitation Act, and the LCHR;

F.  This Court award A.F. monetary damages (including nominal damages) pursuant to the ADA and/or Rehabilitation Act, and the LCHR for the harmed caused by Jefferson's discrimination;

F.  This Court award A.F. reasonable attorneys' fees, costs, and litigation expenses pursuant to 29 U.S.C. § 794a(a)2 and 42 U.S.C. § 12205, 28 C.F.R. § 35.175 and the LCHR; and

G.  Such other relief as the Court deems just and proper, and/or is allowable under Title II of the ADA, the Rehabilitation Act, and the LCHR.

    Respectfully Submitted,

    BIZER & DEREUS
    Attorneys for Plaintiff
    Andrew D. Bizer (30396)
    andrew@bizerlaw.com
    Garret S. DeReus (LA # 35105)
    gdereus@bizerlaw.com
    Emily A. Westermeier (LA # 36294)
    ewest@bizerlaw.com
    3319 St. Claude Ave.
    New Orleans, LA 70117
    T: 504-619-9999; F: 504-948-9996

By: /s/ Andrew D. Bizer
    Andrew D. Bizer